WINSHIP EQUITY EXCHANGE, Respondent, v. ALATALA, Appellant.

(238 N. W. 885.)

(File No. 7220. Opinion filed November 18, 1931.)

M. C. Lasell, of Aberdeen, for Appellant.

Geo. H. Fletcher and Gorsuch & Huntsinger, all of Aberdeen, for Respondent.

RUDOLPH, J. This action was brought to recover on three promissory notes. There was verdict and judgment for the plaintiff, and defendant has appealed from the judgment and order denying motion for a new trial. The notes are each dated December 10, 1926, payable to the order of the First National Bank of Ellendale, N. D., and signed by the defendant, John Alatala. It is alleged in the complaint that for a good and valuable consideration the First National Bank of Ellendale transferred and assigned the notes to the plaintiff, Winship Equity Exchange.

The defendant admitted the execution of the notes, but alleged that they were given without consideration, and further alleged that at the time the notes were given, the Winship Equity Exchange was indebted to the First National Bank of Ellendale in the amount of $7,000, which amount was secured by the indorsement of the directors of the exchange; that as an accommodation to the plaintiff, the defendant executed the notes in question to be delivered to the bank as security for the $7,000 note held by the bank; that the $7,000 note had now been paid; that the bank transferred the notes to the plaintiff without consideration; and that the note should be returned to the defendant.

Upon the trial of this action certain facts were undisputed, as follows: First, the defendant executed the notes sued upon; second, at the time the notes were executed, the defendant owed the First National Bank of Ellendale nothing; third, at the time the notes were given by the defendant the Winship Equity Exchange owed the First National Bank of Ellendale a promissory note in the sum of $7,000 which was secured by the indorsement of some of the directors of the plaintiff company; fourth, after the notes in suit were executed, they were delivered to the Ellendale Bank and the Ellendale Bank held these notes until the $7,000 note owing by plaintiff to the bank had been paid; fifth, at the time suit was started upon these notes, the $7,000 note, above referred to as owing by the plaintiff to the Ellendale Bank, had been paid in full and the plaintiff owed the bank nothing; sixth, after the payment of the $7,000 note to the Ellendale Bank, the bank without receiving anything therefor assigned these notes in suit to the plaintiff; seventh, the defendant some time prior to the time notes in suit were executed, had signed Exhibit 6, which is as follows:

"Whereas, The Winship Equity Exchange is a corporation created under and by virtue of the laws of the State of South Dakota, engaged in operating an elevator at Winship, S. Dak., and its business is transacted by or under the control of a Board of Directors consisting of five (5) members and

"Whereas, it becomes necessary occasionally for the said Board of Directors to secure money with which to carry on the business of said Equity Exchange in buying and selling grain, coal, twine and other merchandise, and for the purpose of securing such money, it is necessary that the said Board of Directors personally guarantee payment of such moneys or the satisfaction of such liabilities as are contracted in connection with the carrying on of such elevator business at said Winship.

"Now therefore, we the undersigned stock holders of said Winship Elevator Company aforesaid, do hereby agree to and with said Board of Directors that they will indemnify said Board of Directors for any loss that they may sustain by reason of guaranteeing any indebtedness of said Equity Exchange, aforesaid, and will hold said Board of Directors harmless from any loss by reason of having guaranteed the payment of any indebtedness that they may have or will hereafter incur."

It is the contention of the respondent that Exhibit 6 was the consideration for the notes in suit. In just what manner it is claimed Exhibt 6 constitutes a consideration for the notes is not clear. However, unless Exhibit 6 did furnish a consideration for the giving of these notes, it is apparent, from the undisputed facts above recited, that the defense of no consideration was established. There is no other claimed consideration except that of Exhibit 6.

It is difficult to follow the reasoning of the respondent. In the first place, there is little or no evidence in the record that the execution of these notes had any connection with Exhibit 6. The only possible evidence to sustain the contention of respondent would be that of the president of the Ellendale Bank. He testified, over objection, that he knew of the agreement, Exhibit 6, at the time the defendant gave these notes, and that "it was talked at the time that the notes were given pursuant to the agreement," but this witness also testified: "Mr. Alatala's notes were handed to us. I don't know who got them." It is apparent that the witness was

not present when Alatala gave these notes. What was said to or by Alatala, when these notes were given, is not in the record, except that Alatala, the defendant, testified as follows: "I signed the exhibits 1, 2 and 3 in the Winship Store. I was asked to sign them by Henry Strand, he said 'sign these notes,' he said 'that the elevator had lots of bills out that they could not collect but when they did collect this money they would pay the money back' and the notes were to be for security." This testimony was not disputed. The defendant, on cross-examination, in reply to the question, "You wanted to do your share in carrying out the agreement when you signed the notes Exhibits 1, 2 and 3?" answered, "Yes." Respondent insists that this question and answer establishes the fact that Exhibit 6 was the consideration for the notes. With this contention we cannot agree. The fact that the defendant wanted to carry out the terms of an agreement he had previously signed, in no way proved the fact that these notes were given in consideration of that agreement—there is no evidence that any mention was made of the agreement, Exhibit 6, when these notes were signed. Evidence is entirely lacking to establish a connection between Exhibit 6 and the notes sued upon which would in any manner support a finding that Exhibit 6 constituted consideration for the notes.

In the case of Farmers' Union v. Reynolds, 127 Kan. 16, 272 P. 108, upon which respondent relies, the shareholders by resolution at a stockholders' meeting, at which the defendant was present, agreed to and did execute their promissory notes in the sum of $350 each to guarantee directors against personal loss. The notes were payable directly to the association and were executed pursuant to the resolution. On the faith of these notes, liability to amount of $15,750 was incurred by the directors. There are no facts in the present case to bring it within the facts or the meaning of this Kansas case.

The respondent has also cited the cast of Conley v. Seligman, 47 S. D. 239, 197 N. W. 293. In this cited case the defendant, Seligman, gave his note directly to the company under an agreement with other stockholders, "for the purpose of keeping the company afloat." The plaintiff advanced to the company $12,000 and held defendant's note as security. There is no showing in the present case for what purpose the notes were given. They were

payable directly to the bank, and it is not shown that the plaintiff, of which it is claimed the defendant was a stockholder, did or was to receive any benefit unless it was by way of security for the $7,000 note which has been paid. Were the notes given to satisfy some obligation the defendant had incurred to the directors under Exhibit 6 (and there is no such showing in the record), the plaintiff was not to thereby benefit. In the present case the most that can be said is that, at some time, just when does not appear, the defendant with others had executed Exhibit 6, for the benefit of the directors of the plaintiff. Some time later the defendant executed the notes in suit, payable to the bank and for which he received nothing. The bank kept the notes until the debt owing by the plaintiff was paid. The notes were then delivered to the plaintiff. Obviously, Conley v. Seligman, supra, is no authority here.

We are of the opinion that there is no support in the record for the judgment, and the judgment and order appealed from are reversed.

POLLEY, P. J., and CAMPBELL, ROBERTS, and WARREN, JJ., concur.